### SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

### Kerry A. HURTON, Eric Laboz, Jonathan R. Beck, Bruce E. Maurice, Sheldon M. Stone and Bernard Stone, Defendants.

### Civ. A. No. 89–1070–Mc.

United States District Court,
D. Massachusetts.

June 29, 1990.

Steven J. Crimmins, S.E.C., Washington, D.C., Dennis R. Surprenant, S.E.C., J.W. McCormack, Boston, Mass., for plaintiff.

Terry Philip Segal, Segal, Moran & Feinberg, Boston, Mass., for Bernard Stone.

Kerry A. Hurton, Boston, Mass., pro se.

Stephen R. Delinsky, Fine & Ambrogne, Boston, Mass., for Sheldon Stone and Bruce Maurice.

## MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McNAUGHT, District Judge.

The defendant Bernard Stone brought a motion for summary judgment, which was heard by the Court. After hearing and consideration, the motion for summary judgment is denied.

The Securities and Exchange Commission alleged that Stone violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)(5) promulgated thereunder in connection with the trading of common stock of Parisian, Inc. The defendant has a brother whose name is Sheldon.

It was the claim of the Commission that another defendant Ms. Kerry Hurton, a former paralegal, communicated material non-public information to the brother Sheldon Stone regarding a possible merger and buy-out of Parisian's common stock and that he in turn relayed the information to his brother.

Sheldon Stone's business associate, another defendant, Bruce Maurice, allegedly sold Ms. Hurton a condominium, lending her money for the sale. Once the sale had been closed, Sheldon Stone signed a check reimbursing Ms. Hurton for about $2,500 of the closing costs. It is claimed that she communicated material non-public information to the brother regarding a possible

merger and buy-out of Parisian common stock. Sheldon then supposedly called his brother and recommended that he, Bernard Stone, buy 1,000 shares of that stock. He did so on July 21, 1987, at $18.25 per share. A week later he bought another 1,000 shares at a lesser price, $17.50 per share. In order to make the second purchase he borrowed $9,000 from his brother. That night the buy-out was announced and the stock value jumped to $31.00 per share. By selling the stock the following day defendant Bernard Stone made a gross profit of approximately $25,800.

The issue then is whether Bernard Stone was a "tippee" and liable for insider trading violations. The SEC calls our attention to the facts that he spent $35,000 to buy that stock when his salary was approximately $40,000 and when his total savings did not exceed $22,000. Secondly, they point out, the purchases were made on dates suspiciously close to the buy-out announcement. Thirdly, Bernard had purchased stock only four times since 1972.

 A tippee may not trade on material non-public information, if an insider has breached a fiduciary duty by disclosing information to the tippee and the tippee knows or should know that there has been a breach. *Dirks v. Securities and Exchange Commission*, 463 U.S. 646, 660, 103 S.Ct. 3255, 3264, 77 L.Ed.2d 911 (1983). The defendant insists in argument that there are factual issues to be determined. Did the brother tell him or indicate to him that the stock purchase recommendation was based on inside information? Is the relationship of this defendant to Ms. Hurton too attenuated to render him liable for insider trading? *See United States v. Chestman*, 903 F.2d 75 (1990).

With the paucity of information available to us, we cannot determine on a motion for summary judgment whether the brother Sheldon Stone was an insider or whether, even if he were, Bernard knew that his brother had breached a duty of confidentiality in disclosing information to him.

The defendants' motion therefore, at the present time at least, is DENIED. It may that it will be proper to resubmit a motion of a similar type at the close of discovery.